#              IN THE UNITED STATES DISTRICT COURT
#            FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
SHARON HARVEY,                    )
                                  )
              Plaintiff,          )
                                  )
         v.                       )          1:16CV574
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social     )
Security,[1]                      )
                                  )
              Defendant.          )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sharon Harvey, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 10; see also Docket Entry 9 (Plaintiff's Memorandum); Docket Entry 11 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of April 4, 2011. (Tr. 146-47.) Upon denial of that application initially (Tr. 68-77, 89-92) and on reconsideration (Tr. 78-88, 96-99), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 100-01). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 31-67.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-25.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 9-11, 245-49), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since April 4, 2011, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: lumbar degenerative disc disease with radiculopathy and hyperlipidemia.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she can sit for six hours and stand and/or walk for six hours in an eight hour working day with fifteen minute breaks every four hours; is limited to frequent operation of foot controls with the lower extremities bilaterally; frequent reaching overhead with the upper extremities bilaterally; frequent climbing of ramps and stairs; no climbing of ladders and scaffolds; frequent stooping, kneeling, and crouching; and only occasional crawling. Further, [Plaintiff] is limited to occasional exposure to unprotected heights; frequent exposure to moving mechanical parts; occasional exposure to weather and weather extremes, such as extreme heat, cold, and humidity and wetness; and nonconcentrated exposure to dust, odors, fumes, and pulmonary irritant[s].
>
> . . .
>
> 6. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the [] Act, from April 4, 2011, through the date of this decision.

(Tr. 17-25 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

3

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . .

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).³ A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

³ "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignment of Error

In Plaintiff's sole issue on review, she faults the ALJ for "failing to resolve inconsistencies between his RFC and the medical opinion evidence." (Docket Entry 9 at 4 (bold font omitted).) In particular, Plaintiff contends that the ALJ found limitations to <u>occasional</u> standing, walking, and bending reflected in a functional capacity evaluation ("FCE") (<u>see</u> Tr. 386),[6] and subsequently adopted by Plaintiff's treating orthopedic surgeon, Dr. Jeffrey D. Jenkins (<u>see</u> Tr. 426), "'consistent with the evidence of record'" (Docket Entry 9 at 4 (quoting Tr. 22)), but adopted an RFC which expressly allowed for "standing and walking up to <u>6 hours</u> each in an 8 hour work day" and <u>frequent</u> stooping and crouching (<u>id.</u> (emphasis added) (citing Tr. 18)). According to Plaintiff, the

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[6] The FCE defined "Occasional" to mean from one to 33 percent of a "[d]ay," but did not clarify whether a "[d]ay" represented an eight-hour work day. (See Tr. 386.) Assuming that Mr. Gilbert intended a "day" to constitute a standard eight-hour work day with two fifteen minute breaks and one 30-minute meal break, see Social Security Ruling 96-9p, <u>Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work</u>, 1996 WL 374185, at *6 (July 2, 1996) ("SSR 96-9p"), "occasional" would translate to a maximum of two hours and twenty minutes.

8

ALJ's failure to explain how those RFC findings could harmonize with the FCE findings the ALJ adopted violated Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") and 20 C.F.R. § 404.1527(b) (Docket Entry 9 at 5), and caused the ALJ to erroneously discount the opinions of consultative examiner Dr. Lynde Knowles-Jonas (see id. at 6 (discussing Tr. 22-23)). Plaintiff urges the Court to find the ALJ's foregoing error prejudicial, because the ALJ's adoption of the FCE's limitations to occasional standing and/or walking would "prevent the performance of the light jobs relied upon by the ALJ at the hearing to deny [Plaintiff's] claim, . . . [and] would also likely limit [Plaintiff] to . . . sedentary work," which, under Rule 201.06 of the Medical-Vocational Guidelines, would result in a finding of disability. (Id. at 5 (citing 20 C.F.R. § 404.1567, and 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.06).) Plaintiff's contentions have merit.

The ALJ's evaluation of the FCE suggests, as Plaintiff argues (see Docket Entry 9 at 5), that the ALJ interpreted the FCE to limit Plaintiff to the exertional demands of light work with certain postural restrictions, and that the ALJ believed the FCE's exertional and postural limitations harmonized with the RFC determination:

9

> The [ALJ] finds it instructive that upon FCE in May 2012, [Plaintiff] could perform <u>light work with some postural limitations</u> . . . . [T]he undersigned has given partial weight to [FCE administrator Thomas R.] Gilbert's opinions following FCE as well as Dr. Jenkins's adoption of those findings and opinions in May 2012. While <u>the opinions as to [Plaintiff's] exertional limitations as well as various postural limitations are consistent with the evidence of record</u>, the extent of the remaining opinions as to the cervical and manipulative limitations are not entirely supported by the treatment notes or [Plaintiff's] reported activities of daily living. Accordingly, Mr. Gilbert's and Dr. Jenkins's opinions have been given some, but not great weight in making this [RFC] finding.

(Tr. 22 (emphasis added) (internal citations omitted).)[7] The ALJ limited Plaintiff to the light exertional level in the RFC, and expressly found that Plaintiff could "stand and/or walk for <u>six hours</u> in an eight hour working day," <u>frequently</u> stoop, kneel, and crouch, and <u>occasionally</u> crawl. (Tr. 18 (emphasis added).)

The ALJ's reliance on the FCE (and Dr. Jenkins's opinion adopting the FCE's findings) to support the RFC cannot withstand scrutiny given the FCE's hopeless ambiguity and internal inconsistency. For example, Mr. Gilbert offered <u>three</u> different opinions regarding Plaintiff's ability to walk and stand. Mr. Gilbert initially opined that Plaintiff could "[p]erform <u>continuous</u> walking, stand/walking, standing . . . on an <u>occasional</u> basis. (Tr. 382 (emphasis added).) In a later portion of the FCE, Mr. Gilbert provided a chart in which he placed an "X" in the

---

[7] The ALJ's reference to "cervical . . . limitations" (Tr. 22) appears to constitute a typographical error, as the FCE does not contain any limitations pertaining to Plaintiff's cervical spine (<u>see</u> Tr. 382-92).

10

"Occasional" columns for "Stand," "Walk," and "Stand/Walk." (Tr. 386.)  This time, however, Mr. Gilbert did not specify whether Plaintiff's ability to walk on an occasional basis involved continuous or intermittent walking.  (See id.)  In yet another section of the FCE, Mr. Gilbert recorded his observations of Plaintiff engaging in various exertional movements, and provided predicted "functional limitations," based on those observations, including that Plaintiff could walk one mile in 30 minutes, stand/walk for one hour and 30 minutes (see Tr. 391), and stand for 60 minutes (see Tr. 392).

Not only do Mr. Gilbert's opinions regarding Plaintiff's abilities to walk and stand differ with each other, but an ALJ could interpret Mr. Gilbert's opinions in four vastly different ways: (1) that Plaintiff can walk (either continuously or intermittently), stand/walk, and stand for two hours and twenty minutes each in a work day, totaling seven hours of some combination of walking, stand/walking, or standing, (which would represent standing and/or walking for the entire work day, factoring in 60 minutes of standard breaks, see SSR 96-9p, 1996 WL 374185, at *6); (2) that Plaintiff can engage in any combination of walking (continuous or intermittent), stand/walking, and standing, that altogether totals two hours and twenty minutes in a work day; (3) that Plaintiff can walk one mile in 30 minutes, stand/walk for 90 minutes, and stand for 60 minutes at a time; or (4) that

11

Plaintiff can walk for 30 minutes, stand/walk for 90 minutes, and stand for 60 minutes <u>total</u> in a work day.  Only the first and third interpretations arguably harmonize with the ALJ's RFC, but the ALJ's decision does not explain how, given these varied interpretations of the FCE, he reconciled the FCE to comport with the RFC determination (<u>see</u> Tr. 18-23).

Mr. Gilbert also offered conflicting findings with regard to the amount of lifting Plaintiff can perform.  Mr. Gilbert first opined that Plaintiff "demonstrated the ability to perform at the **sedentary/light** physical demand level for <u>occasional</u> lifting (lifting 20 [pounds] <u>frequently</u> from 30 to 60 inches)." (Tr. 382 (bold emphasis in original and underlined emphasis added).)  On the next page of the report, Mr. Gilbert opined that Plaintiff could <u>occasionally</u> lift "20 [pounds] from 30 to 60 inches."  (Tr. 383; <u>see also</u> Tr. 384 (reporting that Plaintiff "demonstrated the ability to lift 20 [pounds] <u>occasionally</u> from 30 to 60 inches") (emphasis added).)  In still another section of the FCE, Mr. Gilbert listed Plaintiff's ability to <u>occasionally</u> lift at <u>25 pounds</u> and <u>frequently</u> lift at <u>zero</u> pounds.  (Tr. 391.)  However, the ALJ found that Plaintiff could "perform light work as defined in [the applicable regulation]" (Tr. 18), which, in turn, defines light work to involve the ability to lift <u>20 pounds occasionally</u> and <u>10 pounds frequently</u>, <u>see</u> 20 C.F.R. § 404.1567(b).  Again, the ALJ explained neither how he reconciled Mr. Gilbert's conflicting

12

opinions regarding Plaintiff's ability to lift, nor how the ALJ's interpretation of the FCE harmonizes with an RFC for the full range of lifting associated with light exertion work. (See Tr. 18-23.)

Further conflicts exist between the RFC and Mr. Gilbert's opinions concerning Plaintiff's ability to engage in postural movements. Mr. Gilbert opined that Plaintiff could "[p]erform . . . repetitive stooping, bending, and crouching, and static kneeling activities on an <u>occasional</u> basis" and should "<u>[a]void</u> crawling, . . . repetitive kneeling and static squatting/crouching activities." (Tr. 382 (emphasis added).) Yet, the ALJ found that Plaintiff retained the RFC to <u>frequently</u> stoop, kneel, and crouch, and <u>occasionally</u> crawl. (See Tr. 18.) As with the other areas of conflict, the ALJ's decision fails to explain how the FCE's postural limitations comport with the RFC. (See Tr. 18-23.)

Furthermore, the ALJ's error in that regard does not qualify as harmless. Uncertainty regarding how the ALJ reconciled the FCE's conflicting opinions regarding Plaintiff's ability to stand and walk calls into question his finding at step five of the SEP that light-exertion jobs existed in the national economy that Plaintiff could perform. (See Tr. 24-25.) At the hearing, the ALJ posed a hypothetical question to the VE which matched the ALJ's RFC determination, including allowing up to <u>six hours</u> of standing and/or walking in an eight-hour work day. (See Tr. 63-64.) In response, the VE testified that an individual with the limitations

13

expressed in that hypothetical question could perform the light-exertion jobs of companion, cafeteria attendant, and stock checker (see Tr. 64), and the ALJ found that Plaintiff could perform those jobs at step five of the SEP (see Tr. 24-25). However, the Dictionary of Occupational Titles does not specify how many hours of standing and/or walking per work day those jobs entail (see Dictionary of Occupational Titles, No. 309.677-010, 1991 WL 672667 (Companion), No. 311.677-010, 1991 WL 672694 (Cafeteria Attendant), No. 299.667-014, 1991 WL 672642 (Stock Checker, Apparel) (G.P.O. 4th ed. rev. 1991)), and the VE did not provide any testimony on that specific subject (see Tr. 60-66). Thus, given the ALJ's failure to explain how he interpreted the FCE's ambiguous walking and standing limitations that he expressly credited in formulating the RFC (see Tr. 22), the Court cannot determine on the current record whether Plaintiff could perform the walking and standing required by those jobs.

In sum, the ALJ's failure to explain how he reconciled the internal conflicts within the FCE or the inconsistency between his crediting of the FCE's exertional and postural limitations and the standing, walking, and postural limitations in the RFC rendered his RFC determination and, in turn, his ultimate finding that jobs existed in significant numbers in the national economy that

14

Plaintiff could perform, unsupported by substantial evidence, requiring remand.[8]

Upon remand, the ALJ should not rely on Dr. Jenkins's adoption of the FCE, given its ambiguity and apparent inconsistency, to formulate the RFC, but may recontact Dr. Jenkins for clarification of his opinions and/or may obtain another medical opinion as to Plaintiff's ability to perform work-related activities.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings regarding Plaintiff's RFC and ability to perform jobs available in the national economy. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

March 9, 2017

---

[8] In light of the recommendation to remand this matter for the ALJ to reevaluate the FCE (and Dr. Jenkins's opinion adopting the FCE's limitations), the Court need not address Plaintiff's argument that the ALJ's improper evaluation of the FCE/Dr. Jenkins's opinions caused the ALJ to erroneously find the opinions of consultative examiner Dr. Lynde Knowles-Jonas vague and out of proportion to the findings from the majority of Plaintiff's other examinations. (See Docket Entry 9 at 6.)